# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**JERRY HARVEY,**

    **Plaintiff,**

**vs.**

                                             **No. CIV 99-1462 LCS**

**MICHAEL DAVIDSON, in his individual
and official capacities; KEVIN SHOPE,
in his individual capacity; STEVEN
EMRICK, in his individual capacity;
SAN JUAN COUNTY SHERIFF**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (*Doc. 25*), filed July 24, 2000. The Court, acting upon consent of the parties and designation pursuant 28 U.S.C. § 636, and having considered the submissions of the parties, relevant law, and being otherwise fully advised, finds the motion to be well taken in part, and it shall be **granted in part** and **denied in part.**

### I. Background

    The following statement of facts is set forth in the light most favorable to the Plaintiff, with all reasonable inferences from the record drawn in his favor. See Clanton v. Cooper, 129 F.3d 1147, 1150 (10th Cir.1997). On November 16, 1997, at approximately 10:00 p.m., Jerry Harvey (hereinafter "Harvey") left the Sky Ute Casino in Toawac, Colorado while intoxicated. In the casino parking lot, Harvey was approached by Lena Harris (hereinafter "Harris"), the sister of

a close friend. Harvey alleges that because he was intoxicated, he asked Harris if she would drive him home using a vehicle that belonged to his daughter, Terry King (hereinafter "King"). (Pl.'s Compl. ¶ 10). According to the Plaintiff, Harris agreed and together they drove off, with Harris driving, and proceeded south on U.S. Highway 64. (Pl.'s Compl. ¶ 10). A short while later, Harvey's daughter, King then observed her vehicle pass through Shiprock and assumed that the driver was her father, Harvey. (Pl.'s Compl. ¶ 13). King started following the car and then made a call, using her cellular phone, to a 911 dispatcher. (Ex. B pg. 2). She requested assistance in stopping the vehicle so that she could get her car back. (Ex. B pg. 2). Her conversation continued with the dispatcher, notifying them of her location. King followed the vehicle to a convenience store parking lot where the vehicle had stopped. (Ex. B pg. 7). The Plaintiff alleges that when King arrived at the convenience store parking lot, Harvey and Harris got out of the car and Harris told King that she had been driving Harvey because he was intoxicated and could not drive. (Pl.'s Compl. ¶ 21). Harris proceeded to ask Harvey if he was able to drive and Harvey answered in the affirmative. (Ex. B pg. 6). King stated to the dispatcher that Harvey was out of the car and that she was going to confiscate the car keys. (Ex. B pg. 6).

      The dispatcher dispatched deputies Kevin Shope (hereinafter "Shope") and Steven Emrick (hereinafter "Emrick") to assist King. The dispatcher notified Shope and Emrick of the situation and stated that King wanted her car back, that Harvey was driving her car, and that he was "extremely 47" (another term for intoxicated). (Ex. B pg. 7-8). The dispatcher then notified the Officers that the vehicle had stopped in the convenience store parking lot and that King was in the process of obtaining the keys. (Ex. B pg. 8).

The facts pertaining to when officers Shope and Emrick arrived are in dispute with each side alleging contrary stories. The Plaintiff alleges that he was standing outside the vehicle while the car keys were in the possession of his daughter, King. (Pl.'s Mem. in Opp. of Mot. for Summ. J. at 5-6). Shope and Emrick assert that Harvey was in the driver seat and that the engine was running. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 6-7). Both parties admit that the officers performed some tests to determine whether Harvey was intoxicated. Shope and Emrick claim that Harvey was too intoxicated to continue the testing and that for his own safety they should cease the testing. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 3-4). The Plaintiff claims that he thought he passed the test since the officers did not notify him otherwise. (Pl.'s Mem. in Opp. of Mot. for Summ. J. at 6). Once Shope and Emrick determined for themselves that Harvey was intoxicated, they arrested and charged him with driving while under the influence of an intoxicating liquor.

In making its decision, the Court found the Plaintiff's complaint and response brief unclear as to whether they were asserting state or federal law claims. Therefore, the Court will treat this summary judgment pursuant to both state and federal law.

## II. Standards

Defendants have presented and supported their assertion of qualified immunity under the summary judgment standard of Fed. R. Civ. P. 56. A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact." Id. When applying this

standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F. 3d 1321, 1326 (10th Cir. 1999).

### III. Analysis

#### A. Are the Defendants Entitled to a Summary Judgment Based on Qualified Immunity?

A government official is entitled to qualified immunity from civil damages when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In evaluating a claim of qualified immunity, the first question is whether the plaintiff has asserted a violation of a constitutional or statutory right. See Garramone v. Romo, 94 F. 3d 1446, 1449 (10th Cir.1996). If the plaintiff has asserted a violation of a constitutional or statutory right, then the question becomes whether that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated the right. See id., at 1449 (citing Siegert v. Gilley, 500 U.S. 226, 231 (1991)).

Summary judgment motions involving a qualified immunity defense are determined somewhat differently than other summary judgment motions. See Romero v. Fay, 45 F. 3d 1472, 1475 (10th Cir.1995). When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. Nelson v. McMullen, 207 F. 3d 1202, 1206 (10th Cir. 2000). First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. See Wilson v. Layne, 526 U.S. 603, 609 (1999). Second, the plaintiff must show that the constitutional or statutory right the defendant allegedly violated was

clearly established at the time of the conduct at issue. See id.; Albright v. Rodriguez, 51 F. 3d 1531, 1534-35 (10th Cir.1995). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Oliver v. Woods, 209 F. 3d 1179, 1185 (10th Cir. 2000). If, and only if, the plaintiff establishes both elements of the test does a defendant then bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Albright, 51 F. 3d at 1535.

### 1. Are Defendants Entitled to Qualified Immunity with Respect to Plaintiff's Claim of False Arrest?

Plaintiff is challenging the legality of his arrest and whether officers Shope and Emrick had sufficient probable cause for that arrest. Harvey also asserts that at the time of his arrest, it was stated law that an arrest on private property of an intoxicated person of a stationary motor vehicle is tantamount to a false arrest. (Pl.'s Mem. in Opp. of Mot. for Summ. J. at 10 citing State v. Wegner, 127 N.M. 625 (App. 1999)).

The ultimate question with respect to the Plaintiff's claim of false arrest is whether the events leading up to the arrest of Harvey comported with the probable cause requirement of the Fourth Amendment. With respect to the Plaintiff's claim regarding the false arrest on private property, the Plaintiff relies on State v. Wegner, 127 N.M 625, 985 P.2d 1205 (Ct App. 1999), a case decided two years after Plaintiff's arrest. In order to survive a summary judgment based on qualified immunity, the plaintiff must show that a constitutional or federal statutory right, allegedly violated by the defendant, was clearly established at the time of the conduct at issue. See

Harlow, 457 U.S. at 818. Wegner was not only decided two years after Harvey was arrested, but it is a state case not a Supreme Court or a Tenth Circuit case. Therefore, to the extent that the Plaintiff alleges an arrest on private property is tantamount to a false arrest based on §1983, the Plaintiff fails to cite to a federal right that was clearly established at the time of the arrest. The Plaintiff is thus barred from alleging this claim based on a state right that had yet to come into effect. However, the Plaintiff does assert that the Defendants illegally arrested him without probable cause. Therefore, the following analysis is dedicated to the issue of whether the Plaintiff's claim of an arrest without probable cause withstands Defendants' summary judgment based on qualified immunity.

With respect to the first element of the test, the Plaintiff alleges that he has a right under the Fourth Amendment to be free from unreasonable searches and seizures of his person (Compl. at ¶ 57). Harvey asserts that the Defendants did not act in an objectively reasonable manner when they arrested him without probable cause or that probable cause was based on "blatantly false information or misstatements." (See Pl.'s Mem. in Opp. to Mot. for Summ. J. at 15). Thus, he alleges, the arrest was illegal. Stewart v. Donges, 915 F.2d 572 (10th Cir. 1990). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Tenth Circuit has identified three categories of police-citizen encounters: "(1) consensual encounters which do not implicate the Fourth Amendment, (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity, and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable

only if supported by probable cause." United States v. Davis, 94 F. 3d 1465, 1467-68 (10th Cir.1996). Since the Plaintiff has adequately alleged a deprivation of a constitutional right as required by Wilson, 526 U.S. at 609, the next step of the analysis is whether that right was clearly established at the time of the incident.

In November,1997, the law was clearly established that an officer may make an arrest without a warrant if the officer has probable cause to believe a crime has been committed by the arrestee. See Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Id. Therefore, since the Plaintiff has satisfied his burden of demonstrating that the Defendants' alleged actions violated an actual constitutional right and that the right allegedly violated was clearly established at the time of the incident, the Defendants now bear the traditional burden of showing that there are no genuine issues of material fact in order to be entitled to judgment as a matter of law.  See Albright, 51 F. 3d at 1535.

The Defendants' argue, that since their actions were reasonable and justified, they are entitled to qualified immunity against Plaintiff's claim of an unreasonable seizure pursuant to Fourth Amendment. Defendants refer to the circumstances surrounding the events that led up to the arrest of Harvey in convenience store parking lot. (See Defs.' Mem. in Supp. of Mot. for Summ. J. at 6-9).

To determine if probable cause existed for a warrantless arrest, we examine if, at the time of the arrest, the facts and circumstances within the officer's knowledge and of which the officer

had reasonably trustworthy information were sufficient to warrant a prudent officer in believing the arrestee had committed or was committing a crime. See Hunter v. Bryant, 502 U.S. 224, 228 (1991). See also U.S. v. Gordon, 173 F.3d 761 (10th Cir. 1999) (citing United States v. Snow, 82 F.3d 935, 942 (10th Cir.1996). "Probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer." Id. (citing United States v. Morgan, 936 F.2d 1561, 1568 (10th Cir.1991)). Based upon the current state of the record, the factors that aroused the Defendants' suspicions prior to the arrest of the Plaintiff, may have justified a Terry stop since their conduct is comparable to the conduct of a reasonable person in that situation. See Siegert, 500 U.S. at 231. The officers did indeed have a reasonable suspicion to stop Harvey in the parking lot based on the information provided by the dispatcher.[1] However, there is question of fact as to whether the Defendants had sufficient probable cause to arrest Harvey. The facts are significantly in dispute, particularly around the time when the Defendants arrived at the parking lot where Harvey was present.

In this case, Defendants Shope and Emrick assert that when they arrived at the convenience store parking lot, Harvey was in the driver's seat and that the engine was running. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 6-7). However, the Plaintiff alleges that he was standing outside the vehicle and the keys were in King's hands. (Pl.'s Mem. in Opp. of Mot. for Summ. J. at 5-6). Both parties admit that the officers performed some tests to determine whether Harvey was intoxicated. The Defendants' claim that Harvey was too intoxicated to continue the

---

[1] The Plaintiff did not allege within his complaint that officers Shope and Emrick lacked reasonable suspicion to stop Harvey. He only alleges that they lacked probable cause to arrest.

testing and that for his own safety they should cease the testing. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 3-4). The Plaintiff claims that he thought he passed the test since the officers did not notify him otherwise. (Pl.'s Mem. in Opp. of Mot. for Summ. J. at 6). Once the Defendants determined for themselves, that he was intoxicated, they arrested and charged him with driving while under the influence of an intoxicating liquor pursuant to NMSA §66-8-102.

In deciding summary judgments based on qualified immunity, the Court must look at the evidence in a light most favorable to the Plaintiff. See Simms, 165 F. 3d at 1326. The Court must also consider whether it is resolving abstract issues of law or whether there are findings of fact sufficiently supported by evidence to survive summary judgment. See Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir.1997). A probable cause analysis is highly dependent on the facts. See Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995).  As it now stands, the record contains insufficient evidence to determine whether there was probable cause for a warrantless arrest. Both parties have submitted extremely contradictory statements regarding the time and circumstances surrounding the Plaintiff's arrest. Therefore, if the Court were to take the Plaintiff's evidence as true, there is a substantial issue as to whether Harvey was arrested without probable cause. See Guffey v.Wyatt, 18 F.3d 869 (10th Cir.1994) (holding that factual questions as to "whether police officer had probable cause to arrest referee of basketball game....precluded summary judgment on grounds of qualified immunity in § 1983 action; parties offered conflicting evidence concerning nature of conversation prior to arrest.")

The Defendants have failed to demonstrate "that there are no genuine issues of material fact and that the [Defendants are] entitled to judgment as a matter of law." Albright, 51 F. 3d at

1535. To the contrary, issues of fact abound. Therefore, the motion for summary judgment based on qualified immunity for the claim of false arrest based on insufficient probable cause shall be denied.  See Foote v. Speigel, 118 F. 3d 1416, 1423 (10th Cir.1997).

### 2. Are Defendants Entitled to Qualified Immunity with Respect to Plaintiff's Claim of Illegal Imprisonment and Malicious Prosecution?

Plaintiff asserts that he has "clearly established constitutional right[s]" against malicious prosecution and illegal imprisonment and that such rights were violated the night he was arrested. (Pl.'s Mem. in Opp. of Mot. for Summ. J. at 10 citing State v. Wegner, 127 N.M. 625 (App. 1999)).

With respect to these claims of malicious prosecution and illegal imprisonment, the Plaintiff again relies on State v. Wegner, 127 N.M 625, 985 P.2d 1205 (Ct App. 1999). As stated in the above analysis regarding Plaintiff's claim of a false arrest on private property, the plaintiff must show that a constitutional or federal statutory right, allegedly violated by the defendant, was clearly established at the time of the conduct at issue in order to survive a summary judgment based on qualified immunity. See Harlow, 457 U.S. at 818. The Plaintiff again relies on Wegner, a state case that was decided two years after the arrest. This Court will not provide the research that is required of the Plaintiff in order to survive summary judgment based on qualified immunity. Plaintiff is barred from alleging these claims based on state rights that had yet to come into effect. Therefore, to the extent that the Plaintiff alleges §1983 claims of malicious prosecution and illegal imprisonment, the Plaintiff fails to cite to a *federal* right that was *clearly established* at the time of

the arrest. Thus, the motion for summary judgment based on qualified immunity for the claims of malicious prosecution and illegal imprisonment shall be granted.

### 3. Are Defendants Entitled to Qualified Immunity with Respect to Plaintiff's Claim of Duty to Investigate?

The Plaintiff claims that his Fourth Amendment right to be free from unreasonable seizure implies a duty to investigate. (Pl.'s Mem. in Opp. of Mot. for Summ. J. at 17). The Defendants argue that they are entitled to qualified immunity with respect to all of Plaintiff's federal claims. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 4). Once again, in order to survive a summary judgment based on qualified immunity, the plaintiff must show that a constitutional or federal statutory right, allegedly violated by the defendant, was clearly established at the time of the conduct at issue. See Harlow, 457 U.S. at 818. Although the Plaintiff claims he is entitled to an implied Fourth Amendment right to a duty to investigate, he provides no case law and fails to assert that such right was "clearly" established at the time of the arrest. Therefore, the Defendants' summary judgment will be granted with respect to Plaintiff's claim of duty to investigate.

### B. Are the Defendants Entitled to Summary Judgment with Respect to Plaintiff's State Claims?

To the extent that any of the Plaintiff's claims are based on state law, the Plaintiff is also barred from asserting them since he failed to timely file these claims pursuant NMSA §41-5-15 of the Tort Claims Act. The Plaintiff asserts that §37-1-8 governs and that the statute of limitations is three years. However, waiver of immunity for law enforcement officers is set forth in §41-4-12 of the Tort Claims Act. Therefore since the arrest occurred in November of 1997 and the Plaintiff

filed his complaint in January of 2000, they should be dismissed because they were not filed within the two year statute of limitations.

### C. Are the Defendants Entitled to a Summary Judgment with Respect to Plaintiff's Claim of Negligent Supervision?

The Defendants also claim that the Plaintiff has alleged supervisory claims of inadequate and negligent supervision and that these claims must be dismissed because there can be no derivative claims of supervisory and municipal liability without underlying constitutional violations or violations of alleged torts. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 13). Plaintiff alleges within his complaint, that as a result of Defendant Michael Davidson's failure to exercise reasonable care in supervising Shope and Emrick, Plaintiff's federal and state law rights were violated. (Pl.'s Compl. ¶ 67). However, the Plaintiff fails to adequately provide a response to Defendants' Motion to Summary Judgment regarding that claim. Therefore, pursuant Fed. R. Civ. P. 56(e), once the movant has made such a showing, the adverse party "may not rest upon the mere allegations or denials of [his] pleading, [he] must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party." See also Local Civil Rules 7.3(a). Therefore, the Defendants' summary judgment shall be granted with respect to Plaintiff's claim of negligent supervision.

**THEREFORE, IT IS ORDERED** that Defendants' Motion for Summary Judgment (*Doc. 25*), filed on July 24, 2000, is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that all state claims are **dismissed** on the ground that they were not brought within the statue of limitations. Summary judgment is granted with respect to all federal claims except **for Plaintiff's §1983 claim alleging violation of Plaintiff's Fourth and Fourteenth Amendment rights for failure to arrest without probable cause.**

**IT IS FINALLY ORDERED** that this case is dismissed and judgment is hereby entered in favor of all Defendants except for Kevin Shope and Steven Emrick.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**